WILLIAM VAN BRUNT, Appellant, *v.* NEW YORK TELEPHONE COMPANY, Respondent.

Second Department, April 17, 1924.

Motor vehicles — pedestrian sixty-three years of age, on wet, stormy night, while walking on dirt path on right side of highway containing macadam strip in center thereof, was overtaken and struck by defendant's automobile — evidence presented questions for jury as to negligence of defendant's chauffeur and as to contributory negligence of plaintiff.

In an action for personal injuries sustained by the plaintiff by being struck by defendant's automobile, the plaintiff presented a case for the jury, both as to negligence on the part of defendant's chauffeur and as to contributory negligence, where it appears that the plaintiff, sixty-three years of age, while walking where pedestrians necessarily and usually walked, on the dirt strip on the right side of a highway which had a macadam strip in the center twenty-three feet wide, was overtaken and struck by defendant's automobile; that it was a wet, stormy night; that defendant's chauffeur did not slow down and that he sounded his horn less than two seconds before striking the plaintiff.

APPEAL by the plaintiff, William Van Brunt, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Nassau on the 24th day of March, 1921, upon the dismissal of the complaint at the close of the entire case after a verdict in favor of the plaintiff had been set aside.

*Joseph J. Dreyer*, for the appellant.

*Benjamin F. Briggs* [*Cyrus F. Smythe* and *Charles T. Russell* with him on the brief], for the respondent.

KELLY, P. J.:

At the close of the plaintiff's case in chief the defendant moved to dismiss the complaint without stating the grounds for the motion, and the learned trial justice said, " I think there is a question of credibility I must submit to the jury." The defendant excepted. Defendant then proceeded to call one witness as to the facts of the accident, viz., the driver of defendant's automobile which struck plaintiff. Defendant's witness Nordstrom did not see the accident, but he testified that defendant's driver sounded his horn just as he passed the witness, " about a minute " before the collision with plaintiff, " about fifty feet." Anderson, the chauffeur, and the plaintiff and his witness Elliott say the horn sounded when the automobile was about twenty-five feet from the plaintiff.

I do not think it makes much difference whether it was twenty-five feet or fifty feet. The automobile was traveling at ten miles

an hour according to the chauffeur, and at that rate of speed it would cover twenty-five feet or even fifty feet in a second or two. Certainly the horn was not sounded a *minute* before the crash.

At the close of the case defendant moved to dismiss on the ground that plaintiff had failed to show negligence and because the evidence affirmatively showed contributory negligence on the part of plaintiff. The court reserved decision and submitted the question of negligence and contributory negligence to the jury in a charge to which defendant took no exception. The jury found a verdict for plaintiff for $750, and on the coming in of the verdict the learned justice set it aside and granted the motion to dismiss the complaint.

Assuming that the learned justice had power to reserve decision and take the verdict of the jury (*Bail* v. *N. Y., N. H. & H. R. R. Co.*, 201 N. Y. 355), it is not a question of the verdict being against the evidence but a legal proposition whether plaintiff made out a case for the jury.

I am of opinion that the plaintiff presented a case for the jury both as to negligence on the part of defendant's chauffeur and as to contributory negligence. I think the judgment should be reversed on the law and the verdict reinstated.

The following facts appear in the evidence: New York avenue runs north and south at Huntington. It is the old highway leading from the main street in the village south to the railroad station, and thence south across the island. The accident which is the subject of this action occurred on November 16, 1920, about five o'clock P. M., near the Huntington station where New York avenue runs under the Long Island railroad tracks which run east and west. It was " dark like," as it might well be at that time of day in November.

There was an electric arc light in the vicinity, which " practically." lighted up the road. It was said that it was a " very stormy " night, had been or was raining. After the accident plaintiff was lying with his head and part of his body on the edge of the macadam strip in the middle of the road and the rest of his body " in the mud puddle." At the place where the accident happened there is a macadam strip in the center of New York avenue twenty-three feet wide, and on either side of the macadam strip there is a dirt road four or six feet in width.

The plaintiff, sixty-three years of age, had finished his day's work and was on his way home. He was walking south, on the dirt strip on the right side of the road as he was going, which was the west side of the road. There is no sidewalk, nor is it disputed

that he was walking where pedestrians necessarily and usually walked. Plaintiff says he was walking " pretty close to the sidewalk, as close as I could where there was a sidewalk." He heard a " noise "— he heard " one horn " from back of him " maybe twenty-five feet away. * * * Q. When you heard this horn did you look back? A. Well, I was walking and happened to look just that way. Q. Did you see any automobile when you looked back that way twenty-five feet before you were struck? * * * [This is the learned counsel's statement; the plaintiff did not say that he looked back twenty-five feet before he was struck.] A. Yes, I did see an automobile."

He said in answer to the court that the automobile was on the macadam strip. Evidently he was at once struck by the automobile and rendered unconscious. The defendant's chauffeur, Anderson, testified that he was traveling at the rate of ten miles an hour. *He* says he saw plaintiff about twenty-five feet ahead of him " and as I saw him I blew my horn, *and I kept right on going* about, as I say, ten miles an hour, I should say."

Of course at ten miles an hour, a mile every six minutes, he traveled the twenty-five feet in less than two seconds.

Plaintiff's witness Elliott was about twenty feet from the point of the accident. He saw plaintiff walking south on New York avenue " about three feet from the west edge * * *. It is a dirt path." Elliott saw the automobile also traveling south coming behind the plaintiff. The automobile was on the macadamized part of the road. He says the automobile was on the right-hand side of the macadam strip on the edge of the dirt path. The chauffeur had at least twenty-three feet of macadam on which to operate his car. Elliott testifies: " Q. Will you tell us what you saw and what happened? A. Well, as his machine was coming up, as he got close upon this man, this man, it seemed, stepped from the left. Seemed to look — The Court: Looked where? Mr. Dreyer: I move to strike that out, if your Honor please. I just want him to describe what the man did. By Mr. Dreyer: Q. Stand up, Mr. Elliott, and just show what Mr. Van Brunt did. Turn in the direction he was walking. A. He was walking this way (illustrating). He stepped out and looked. By the Court: Q. He looked back? A. He looked back, yes. I don't know what his intentions were. Q. Never mind. He looked back? A. Yes. Q. Then what did you do? A. After he looked back he had been struck. Q. What? A. The machine had hit him. Q. He was walking on the dirt, you say? Was he on the dirt when he looked back, on the dirt road? A. I couldn't be looking at all things at once. Q. No, but when you looked back, you

saw him? A. I was not looking just exactly where he was. I know he was walking up on his right-hand side. Q. Was he on the dirt or on the macadam? A. He was right at the edge, I know."

The witness says plaintiff was struck by the right front mudguard of the automobile. The machine turned to the left, as the witness supposed, to avoid running over plaintiff, and then ran fifteen feet, turning in off the macadam to the right hand or west side of the road. The witness says the automobile did not slow up before striking plaintiff.

The plaintiff was badly injured. He was unconscious and was taken to the Huntington Hospital, where it was ascertained that his skull was fractured. He remained there ten days.

The learned trial justice having reserved decision on a motion for nonsuit, in his charge to which defendant took no exception, submitted the question of defendant's negligence and plaintiff's contributory negligence to the jury. They found a verdict for plaintiff for $750, which, of course, was a very moderate verdict, but plaintiff, sixty-three years old, a laborer driving a coal or feed wagon in Huntington, is apparently willing to take it.

On the coming in of the verdict, the trial justice set it aside and granted the motion to dismiss the action. He did not state his reasons, but I take it he agrees with defendant's contention that plaintiff was guilty of contributory negligence as matter of law. From my point of view, there was clearly enough to go to the jury on the question of the negligence of the chauffeur, who, with a macadam roadway twenty-three feet in width, ran so close to the west edge as to overtake and strike the plaintiff who was in full view, and the evidence shows that the chauffeur did not sound his horn until he was within twenty-five feet of the pedestrian, and he did not slow down. It is provided in the Highway Law (§ 286, subd. 8): "Upon approaching a pedestrian who is upon the traveled part of any highway and not upon a sidewalk, and upon approaching an intersecting highway or a curve or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling." Overtaking vehicles should keep out of the way of the vehicle overtaken. This appears to be common sense and the same principle ought to apply to the operation of an automobile, or any other vehicle for that matter, overtaking a pedestrian in full view. The pedestrian going on with his back to the overtaking car should be warned or avoided. Whether the chauffeur in the case at bar exercised reasonable care was, I think, a question for the jury.

Now as to plaintiff's conduct. I try to visualize the happenings

Second Department, April, 1924.          [Vol. 209

at the time of the accident.  A wet, stormy night, the sixty-three-year old plaintiff walking south on the west side of the highway, on the dirt " wing " or path — whatever it may be called.  It was the only place on which pedestrians could walk, if vehicles had the first call on the twenty-three-foot macadam strip.  Respondent argues: " The practice of pedestrians to walk on dirt paths alongside of automobile roads is too common to need comment.  The practice of drivers of automobiles to pass by these pedestrians when they see that they are safely off the road without giving them an extraordinary amount of thought is also a most usual one."  But New York avenue was not an " automobile road " any more than a road for pedestrians.  It was the " King's highway," and the rights of the plaintiff on his way home from work were as sacred as those of the telephone company's automobile. If it is " the practice of drivers of automobiles to pass by these pedestrians when they see that they are safely off the road," well and good, so long as they are *safely off the road.*  Even then I am inclined to dissent from the proposition that the chauffeur may pass them without an extraordinary amount of care.  It may be customary, but safety of life and limb of a human being is an important thing.  At any rate, the People by their statute say that upon approaching a pedestrian who is on the traveled part of a highway and not on the sidewalk, " every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling."

The chauffeur did not slow down, his horn was sounded when he was on top of the man — less than two seconds of the crash. He might better have kept quiet.  As it was, the blast of the horn caused the pedestrian to start and to look around.  Whether his body actually moved out towards the edge of the macadam or on the macadam I cannot tell from the evidence.  I think his movement was the natural involuntary start or move of a man walking along in apparent security with a clear space for overtaking automobiles to pass him.  The jury had before them the illustration by the witness Elliott of just what the plaintiff did.

My own notion is that the chauffeur was unnecessarily running too close to the west edge of the macadam.  There was another automobile coming north, but apparently it did not reach the exact point of the collision with plaintiff until after the accident.  It was 300 feet away according to Elliott and also according to defendant's chauffeur.  But there were twenty-three feet of macadam roadway for the automobile.  Anderson, the chauffeur, says plaintiff was " probably twelve inches or something to that effect, I should say " as the automobile came up behind him.  He thinks the auto-

mobile was three feet from the edge of the macadam and his story is that plaintiff stepped out in front of the automobile.

If plaintiff did move out, it was the sudden involuntary movement occasioned by the sound of the horn immediately before the crash—less than two seconds. Elliott says the automobile was on the west edge of the macadam strip, " at the edge driving up."

The questions of negligence and contributory negligence were for the jury, who saw witness Elliott's illustration of what plaintiff did and who saw and heard plaintiff.

The judgment and order setting aside the verdict and dismissing the complaint should be reversed on the law and the facts and the verdict reinstated, with costs to appellant.

RICH, JAYCOX, MANNING and YOUNG, JJ., concur.

Judgment and order setting aside verdict and dismissing complaint reversed on the law and the facts, and verdict unanimously reinstated, with costs to appellant.